**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JERRY WAYNE SHERRY** | § | |
| | § | |
| **V.** | § | **A-15-CV-0574 RP** |
| | § | |
| **LORIE DAVIS** | § | |

## ORDER

Before the Court is Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Document 1). Petitioner, proceeding pro se, has paid the applicable filing fee. For the reasons set forth below, the undersigned orders that Petitioner's application for writ of habeas corpus is **denied**.

## DISCUSSION

Petitioner is in custody pursuant to a judgment and sentence of the 21st Judicial District Court of Bastrop County, Texas. Petitioner was convicted of driving while intoxicated third or more habitual and sentenced to a term of fifty years' imprisonment. In this habeas action Petitioner alleges he was denied his right to the effective assistance of both trial and appellate counsel; that the statute under which he was convicted, Texas Transportation Code § 724.012, is unconstitutional; that he was denied his right to due process of law because the court reporter's transcript failed to include the substance of a bench conference; and that prosecutorial misconduct deprived him of his right to due process of law.

## STATEMENT OF THE CASE

### A.    Petitioner's Criminal History

Respondent avers she has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 21st Judicial District Court of Bastrop County, Texas. Petitioner was charged by indictment with driving while intoxicated third or more offense, with two prior consecutive felony convictions alleged for the purpose of enhancing his punishment. A jury found Petitioner guilty of the charge and the enhancements stated in the indictment, and he was sentenced to a term of fifty years' imprisonment on February 6, 2013. Petitioner's appellate counsel filed a timely motion seeking a new trial, which motion was denied.

Petitioner's conviction and sentence were affirmed by the Texas Third Court of Appeals on August 1, 2013. *Sherry v. State*, No. 03-13-00126-CR, 2013 WL 4487559 (Tex. App.–Austin 2013, pet. ref'd). A petition for discretionary review was refused by the Texas Court of Criminal Appeals on March 12, 2014. *Sherry v. State*, No. PD-1494-13. Petitioner filed an application for a state writ of habeas corpus on April 21, 2015, which was denied without written order by the Texas Court of Criminal Appeals. Document 12, Exh. 30 at 59.

### B.    Factual Background

The factual background of this case is found in the Texas Third Court of Appeals' opinion:

[Petitioner] was stopped by Department of Public Safety Trooper Christopher Wray for failure to wear his seatbelt. After detecting the odor of an intoxicating beverage, Trooper Wray asked appellant to step out of the vehicle to perform a "horizontal gaze nystagmus" test; during testing, Trooper Wray observed six possible indicators of intoxication. [Petitioner] subsequently failed to complete the walk and turn field sobriety test, failed to recite the alphabet, failed to count from one to forty, and declined to submit to a breath test. Following [Petitioner's] refusal of a breath test, Trooper Wray arrested [Petitioner] and took him to Smithville Regional Hospital for

a blood draw as authorized by Texas Transportation Code section 724.012. See Tex. Transp. Code § 724.012(b)(3)(B).[1]

At trial, Trooper Wray testified that the blood evidence was statutorily obtained on the basis of his knowledge that [Petitioner] had prior convictions for driving while intoxicated, which he obtained from the Department of Public Safety database. Forensic chemist James Burris also testified that he examined [Petitioner's] blood and found it to contain .152 grams of alcohol per 100 milliliters of whole blood, which is nearly twice the legal limit. See Tex. Penal Code § 49.01(2)(B).

*Sherry v. State*, No. 03-13-00126-CR, 2013 WL 4487559, at *1.

At Petitioner's trial, the jury was shown a video recording of Petitioner's attempts to complete the field sobriety tests. Document 12, Exh. 9 at 44. Trooper Wray testified that Petitioner was placed under arrest on suspicion of driving while intoxicated, based on his observations of

---

[1] The section of the Texas Transportation Code pursuant to which Petitioner's blood was taken without a warrant provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
> ***
> (3) [If] at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person:
> ***
> (B) on two or more occasions, has been previously convicted of or placed on community supervision for an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code, or an offense under the laws of another state containing elements substantially similar to the elements of an offense under those sections.

Tex. Transp. Code § 724.012. This provision of the Texas Transportation Code was ultimately found to violate the Fourth Amendment, most notably on January 13, 2014, when the United States Supreme Court granted a writ of certiorari and vacated the state court decision in *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. Crim. App. 2012), and remanded the matter to the Texas Court of Appeals in light of the decision in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). *Aviles v. Texas,* 134 S.Ct. 902 (2014) (mem.). On remand from the Supreme Court, the Texas Court of Appeals held that the statute providing for mandatory blood draw when an arresting officer had reason to believe that defendant had two or more prior convictions for driving while intoxicated created an unconstitutional, categorical per se exception to the warrant requirement, and remanded the case for a new trial. *Aviles v. State*, 443 S.W.3d 291, 292-93 (Tex. App.–San Antonio 2014, pet. ref'd).

Petitioner, including slurred speech and a "remarkable loss of balance" when Petitioner got out of his truck, *id.*, Exh. 9 at 31, and the results of the field sobriety tests. *Id.*, Exh. 9 at 44.

The transcript is somewhat contradictory with regard to Petitioner's consent to a breath test of his blood alcohol level. Trooper Wray testified:

> A. After I read him the DIC 24 Statutory Warning and requested a specimen of his breath, he consented to have a voluntary specimen blown into the portable breath tester.
> Q. What about blood? Did he want a blood test?
> A. No, sir, that was not discussed.
> Q. Okay. So he did not want to do the Intoxilyzer 5000?
> A. Correct.

*Id.*, Exh. 9 at 46.

After placing Petitioner under arrest and reading him the statutory warning, Trooper Wray determined to acquire a blood sample from Petitioner for the purpose establishing his blood alcohol level. *Id.*, Exh. 9 at 47. Petitioner's car was inventoried and towed and he was transported to a medical facility for the purpose of acquiring a blood sample. *Id.*, Exh. 9 at 47. Trooper Wray did not seek a warrant for the blood sample.

### C.    Petitioner's Grounds for Relief

Petitioner asserts he is entitled to federal habeas relief because:

1. He was denied his right to the effective assistance of counsel because his trial counsel failed to object to the admission of the evidence of his blood alcohol content, thereby preserving a Fourth Amendment issue for appellate review.

2. He was denied his right to the effective assistance of counsel because his trial counsel failed to strike two jurors for cause.

3. He was denied his right to the effective assistance of counsel because his trial counsel failed to object to improper enhancements stated in the indictment.

4. His conviction was obtained by means of an unconstitutional statute, i.e., Texas Transportation Code § 724.012.

5. The court reporter's record is incomplete because it fails to identify the basis of trial counsel's objection to the indictment.

6. He was denied his right to the effective assistance of counsel because his appellate counsel failed to file an adequate motion for a new trial.

7. He was denied his right to a fair trial because the prosecutor made "improper comments" "solely for the purpose of inflaming the minds of jurors."

**D.      Exhaustion of State Court Remedies**

Respondent allows Petitioner has exhausted his state court remedies regarding the claims brought in this application. A review of the state court records submitted by Respondent indicates Petitioner properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act in *Harrington v. Richter*, 562 U.S. 86, 97–100 (2011). The Supreme Court noted that the starting point for any federal court reviewing a state conviction is 28 U.S.C. § 2254, which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court stated that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* The deference due to a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Supreme Court reaffirmed that "a state court need not cite nor even be aware of our cases under § 2254(d)" for its opinion to be entitled to deference. *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). When a state court decision denying relief is unexplained, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable

application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted).

Under the unreasonable application clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provision of § 2254(d)(2) which allows the granting of federal habeas relief when the state court made an unreasonable determination of the facts is limited by the next section of the statute, § 2254(e). Section 2254(e) requires a federal court to presume state court factual determinations to be correct, although a petitioner can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Absent a showing of clear and convincing evidence, the federal court must give deference to the state court's factual findings. *Id.*

**B.**     **Analysis of Petitioner's claims for relief**

1.     Ineffective assistance of trial counsel because his trial counsel failed to object to the warrantless taking of a blood sample, thereby preserving this issue for appellate review.

Petitioner raised his ineffective assistance of counsel claims in his application for state habeas relief, which claims were denied. Accordingly, the AEDPA limits the scope of this Court's review to determining whether the adjudication of this claim by the state court: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

In deciding whether counsel's performance was deficient, the Court must apply a standard of objective reasonableness, mindful that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation omitted).

The prejudice prong of *Strickland* provides for federal habeas relief only if there is a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' 'The likelihood of a different result must be substantial, not just conceivable.'" *Trevino v. Davis*, 829 F.3d 328, 351 (5th Cir. 2016) (quoting *Strickland*, 466 U.S. at 694, and *Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Petitioner contends his counsel's performance was deficient because he failed to object to the taking of a blood sample which Petitioner asserts violated his constitutional right to be free of an unreasonable search, thereby preserving this issue for appellate review. Petitioner bases his contention that the taking of the blood sample violated his Fourth Amendment rights on the United

States Supreme Court's decision in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). The decision in *McNeely* was issued subsequent to Petitioner's trial. Accordingly, because there was no legal precedent for the argument that the taking of the blood sample pursuant to the state statute violated Petitioner's Fourth Amendment rights, counsel's performance cannot be considered deficient or prejudicial because he failed to make an argument that, at that time, would have been unsuccessful. At the time of Petitioner's trial in February of 2013, motions to suppress warrantless blood samples taken pursuant to Texas Transportation Code § 724.012 were routinely denied. *Chidyausiku v. State*, 457 S.W.3d 627, 630 (Tex. App.–Fort Worth 2015, pet. ref'd); *Weems v. State*, 434 S.W.3d 655, 658-59 (Tex. App.–San Antonio 2014, pet. granted); *Aviles v. State*, 385 S.W.3d 110, 112-13 (Tex. App.–San Antonio 2012, pet. ref'd). Accordingly, Petitioner is not entitled to habeas relief on this claim.

     2. <u>Ineffective assistance of trial counsel because his trial counsel failed to strike two jurors for cause</u>.

     Petitioner further contends that his counsel erred by failing to strike two jurors for cause because these jurors were "victims" of DWI crimes. In conducting the deficient performance analysis of *Strickland* in the context of counsel's failure to strike an allegedly partial juror, the Court must evaluate whether the juror was actually biased. *Virgil v. Dretke*, 446 F.3d 598, 608-10 (5th Cir. 2006). A review of the record indicates the two jurors never expressed actual bias. Because there is no evidence of actual bias, counsel's failure to strike these jurors cannot be considered deficient performance. *Compare id.* at 608-11 (finding no deficient performance of counsel where jurors specifically stated they were not biased and finding deficient performance where the jurors stated they would be biased); *Hughes v. United States*, 258 F.3d 453, 462 (6th Cir. 2001) ("When a

venireperson expressly admits bias on voir dire, without a court response of follow-up, for counsel not to respond in turn is simply a failure to exercise the customary skill and diligence that a reasonably competent attorney would provide." (internal quotations omitted)). Because counsel's performance was not deficient with regard to the failure to strike these jurors, this claim does not provide a basis for habeas relief.

3. Ineffective assistance of counsel because counsel did not object to the indictment.

Petitioner also asserts his trial counsel failed to object to improper enhancements stated in the indictment. As argued by Respondent and pursuant to a thorough review of the record in this matter, the Court concludes the enhancements stated in the indictment were not deficient nor unwarranted and, accordingly, counsel's alleged failure to object to these enhancements was neither deficient performance nor prejudicial and Petitioner is not entitled to habeas relief on this claim.

4. Texas Transportation Code § 724.012 is unconstitutional.

Petitioner contends that, pursuant to the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S.Ct. 1552 (2013), the Texas statute which allowed for the warrantless taking of a blood sample to establish blood alcohol content is unconstitutional because it violates the Fourth Amendment. In *McNeely*, a plurality of the Supreme Court disavowed a per se rule of exigency for blood draws in drunk-driving cases, holding that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of circumstances." *Id.* at 1562. The *McNeely* court concluded that, "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561. The

decision in *McNeely* was issued after Petitioner's trial but before the state appellate court issued its decision in Petitioner's direct appeal.

As noted supra, the statute challenged by Petitioner was ultimately found insufficient to provide a per se exception to the Fourth Amendment's warrant requirement. On January 13, 2014, the United States Supreme Court granted a writ of certiorari and vacated the state court decision in *Aviles v. State*, 385 S.W.3d 110, 116 (Tex. App.–San Antonio 2012, pet. ref'd), and remanded the matter to the Texas Court of Appeals in light of the decision in *McNeely*. *Aviles v. Texas,* 134 S.Ct. 902 (2014) (mem.). On remand from the Supreme Court, the Texas Court of Appeals held that the statute providing for a mandatory blood draw when an arresting officer had reason to believe that defendant had two or more prior convictions for driving while intoxicated created a wrongful categorical per se exception to the warrant requirement, and remanded the case for a new trial. *Aviles v. State*, 443 S.W.3d 291, 292-93 (Tex. App.–San Antonio 2014, pet. ref'd). The Texas Court of Appeals did not, at that time, find that the statute itself was facially unconstitutional. *Id.* at 294 n.2 ("This court did not hold in *Weems*, and does not now hold, that sections 724.011(a) and 724.012(b)(3)(B) are unconstitutional. Rather, we merely held that under *McNeely*, these provisions did not create per se exceptions to the Fourth Amendment's warrant requirement. The statutes may, in fact, be used for other purposes."). Subsequent decisions of the Texas appellate courts have found the statute unconstitutional as applied to a particular defendant in particular circumstances, but the statute has not been found facially unconstitutional because the statute does not explicitly prohibit the arresting officer from seeking a warrant for a non-consensual blood draw nor does the operation of the statute always involve a lack of exigent circumstances. *See State v. Villarreal*, 475 S.W.3d 784, 814-15 (Tex. Crim. App. 2015) (affirming the holding of the Texas Court of Appeals that the

defendant's Fourth Amendment rights were violated by a warrantless, non-consensual blood draw "authorized" by the statute, but concluding that the "court of appeals erred by addressing the constitutionality of the implied-consent statute because [the defendant] abandoned his constitutional challenge in the trial court.."), *petition for cert. denied*, 136 S.Ct. 2544 (2016); *State v. Munoz*, 474 S.W.3d 8 (Tex. App.–El Paso 2015, pet. ref'd) (holding that the nonconsensual search of an intoxicated driving suspect's blood, conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Texas Transportation Code, in the absence of a warrant or any applicable exception to the warrant requirement, violated the Fourth Amendment); *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App.–San Antonio 2014) ("we hold that the implied consent and mandatory blood draw statutory scheme found in the Transportation Code are not exceptions to the warrant requirement under the Fourth Amendment. To be authorized, the State's warrantless blood draw of [the defendant] must be based on a well-recognized exception to the Fourth Amendment."), *aff'd*, 493 S.W.3d 574 (Tex. Crim. App. 2016) .

The only argument raised in Petitioner's direct appeal was his *McNeely* claim. The state appellate court denied relief on this claim based on Petitioner's failure to raise the claim at trial.

> Appellant asserts a facial challenge to the constitutionality of section 724.012 of the Texas Transportation Code, asserting that "no set of circumstances exists under which the statute will be valid." *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Appellant did not raise this challenge in the trial court. Relying on *Garcia v. State*, 887 S.W.2d 846 (Tex. Crim. App. 1994), appellant argues that a defendant may raise a constitutional challenge to the facial validity of a statute for the first time on appeal. *See id.* at 861 (stating that because statute was not facially unconstitutional, appellant was required to raise objection in trial court to preserve error for appeal). However, the Texas Court of Criminal Appeals has since held that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute." *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). As an intermediate court of appeals, we are bound to follow the precedent of the court of criminal appeals. *See* Tex. Const. art. V, § 5(a) (court of criminal appeals is final authority for criminal law in Texas).

> In light of *Karenev*, we hold that because appellant did not challenge the facial validity of section 724.012 of the Texas Transportation Code at trial, he may not raise the issue of its constitutionality for the first time on appeal.

*Sherry v. State*, No. 03-13-00126, 2013 WL 4487559 at *2 (Tex. App.–Austin 2013, pet. ref'd).

Accordingly, this federal habeas claim was denied by the state court based on a procedural bar rather than on the merits of the claim.

> If a state court refuses to hear a state prisoner's federal claims because the prisoner failed to comply with a regularly enforced state procedural requirement, the independent and adequate state ground doctrine serves to bar federal habeas for those claims. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).

*Steward v. Cain*, 259 F.3d 374, 377 (5th Cir. 2001). A procedural default is not an adequate ground for denial of federal habeas relief unless the state courts apply the bar strictly and regularly to the vast majority of similar claims. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995). The Fifth Circuit Court of Appeals has held that the procedural default of a claim premised on a habeas petitioner's failure to comply with Texas' contemporaneous objection rule is an adequate and independent state-law basis sufficient to bar federal habeas review of the claim. *Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007); *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007).

If a state court has declined to address the merits of a claim presented as a claim for federal habeas relief, based on the petitioner's failure to comply with a state procedural rule, the federal court may not consider the merits of the claim absent a showing of cause for the petitioner's procedural default of the claim and prejudice arising therefrom, or a demonstration that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *Hughes v. Quarterman*, 530 F.3d 336, 341 (5th Cir. 2008); *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996).

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[*Coleman*, 501 U.S.] at 753, 111 S.Ct. 2546 (internal quotation marks and citation omitted). "Examples of external impediments include active governmental interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997). To demonstrate actual prejudice, the petitioner must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."*Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 493, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). The fundamental miscarriage of justice exception to the cause requirement of the procedural default doctrine is limited to cases in which the petitioner can show that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense," *Dretke v. Haley*, 541 U.S. 386, 393, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (quoting *Murray*, 477 U.S. at 496, 106 S.Ct. 2678).

*Hughes*, 530 F.3d at 341-42.

Petitioner has arguably demonstrated cause for his procedural default of this claim in the state courts, but he has not established prejudice arising from the default. With regard to the issue of cause, at the time of Petitioner's criminal trial the Supreme Court had not issued the *McNeely* decision and, accordingly, the legal basis for the claim could conceivably be found to be reasonably unavailable. However, with regard to prejudice, at the time of Petitioner's trial and appeal the operation of the challenged state statute had not been found to violate a defendant's Fourth Amendment rights. Therefore, Petitioner has not established actual legal prejudice arising from his default of the claim, i.e., that his conviction would have been reversed on appeal absent his procedural error. Nor has Petitioner shown that the admission of this evidence infected his entire trial with error of constitutional dimensions.

Petitioner has not established that a fundamental miscarriage of justice will occur absent review of this claim. To establish a fundamental miscarriage of justice, the petitioner must

demonstrate that they are actually innocent of the crime of conviction, i.e., that as a factual matter, he did not commit the crime for which he was convicted. *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *Woodard v. Thaler*, 702 F. Supp. 2d 738, 752 (S.D. Tex. 2010). The record in this matter establishes that Petitioner was actually guilty of the substantive offense. Because Petitioner was not actually innocent of the substantive crime, a fundamental miscarriage of justice will not occur if Petitioner is not granted federal habeas relief.

Additionally, violations of the Fourth Amendment do not per se warrant federal habeas relief–a habeas petitioner asserting a Fourth Amendment violation is not eligible for relief if they had a full and fair opportunity to litigate their Fourth Amendment claim in the state courts. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."); *Billiot v. Maggio*, 694 F.2d 98, 100 (5th Cir. 1982). Even Fourth Amendment claims which were not actually litigated in the state courts are subject to the rule of *Stone v. Powell*, because it is the existence of state processes allowing an opportunity for full and fair litigation of Fourth Amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the rule and bars federal habeas corpus consideration of claims. *Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002); *Woodard v. Thaler*, 702 F. Supp. 2d 738, 759 (S.D. Tex. 2010). Even if the state court improperly applied its own procedural law in refusing to consider a Fourth Amendment argument, "[e]rrors in adjudicating Fourth Amendment claims are not an exception to *Stone's* bar." *Moreno*

*v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). Disagreement with the outcome in state court does not remove the *Stone* bar. *Woodard* , 702 F. Supp. 2d at 759-60.

Because Petitioner has not established his actual innocence of the crime of conviction, thereby overcoming the procedural default doctrine, and because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, notwithstanding that his Fourth Amendment claim was not adjudicated on the merits because of a procedural bar, the Court may not grant federal habeas relief to Petitioner on his Fourth Amendment claim.

5. <u>The court reporter's record is incomplete because it fails to identify the basis of trial counsel's objection to the indictment.</u>

Petitioner alleges that the court reporter failed to completely transcribe a bench conference and that this "error" entitles him to federal habeas relief because it deprived him of a due process right to appeal his conviction and sentence based on the argument raised by his counsel in the bench conference, citing *Bounds v. Smith*, 430 U.S. 817 (1978).

Federal habeas relief is predicated on the finding of a violation of a petitioner's federal constitutional rights. *Lawrence v. Lensing*, 42 F3d 255, 258 (5th Cir. 1995). To be entitled to federal habeas relief, the petitioner must demonstrate that his conviction occurred by means of a violation of a specific provision of the United States Constitution. *Lockett v. Anderson*, 230 F.3d 695, 707 (5th Cir. 2000). Although there is a federal constitutional right to access the courts, *Bounds*, 430 U.S. at 821, 828, the United States Supreme Court has not held that there is due process right to an appeal of a criminal conviction. *See Martin v. Estelle*, 492 F.2d 1120, 1122 (5th Cir. 1974) (stating "[a]ny argument that due process requires a right to appeal was answered in *Griffin*, 351 U.S. at 18, where

the court said that . . . a State is not required by the Federal Constitution to provide appellate courts

or a right to appellate review at all.").

> The right that *Bounds* acknowledged was the (already well-established) right of
> *access to the courts*. In the cases to which *Bounds* traced its roots, we had protected
> that right by prohibiting state prison officials from actively interfering with inmates'
> attempts to prepare legal documents, or file them, and by requiring state courts to
> waive filing fees, or transcript fees, for indigent inmates.

*Lewis v. Casey*, 518 U.S. 343, 350 (1996) (internal citations omitted).

Petitioner was not deprived of his right to access the courts by the state's failure to provide

him with a transcript of the bench conference. In *Lewis*, the Supreme Court stated that, to show a

deprivation of the right to access the courts, a plaintiff or petitioner must establish that the state's

action prevented them from presenting a non-frivolous claim to the courts. *Id.* at 351. Petitioner has

not demonstrated that the failure to transcribe the bench conference interfered with his ability to

present a meritorious argument to the state courts in his direct appeal.

> In *Griffin v. Illinois*, 351 U.S. 12, 19-20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the
> Supreme Court held that the Due Process and Equal Protection clauses of the
> Fourteenth Amendment require that states provide indigent defendants with a trial
> transcript free of charge when it is necessary for meaningful appellate review.
> However, the state is not "obligated to automatically supply a complete verbatim
> transcript."*Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir.1980), and a State need
> not waste its funds providing for free those parts of the transcript that are not
> "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495,
> 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete
> transcripts so that the defendants ... may conduct 'fishing expeditions' to seek out
> possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).

*Kunkle v. Dretke*, 352 F.3d 980, 985-86 (5th Cir. 2003) (rejecting a claim that the United States

Constitution requires the state to provide an indigent defendant with a complete trial transcript,

including voir dire proceedings).

There is no United States Supreme Court opinion holding that an incomplete trial transcription equates to the denial of the defendant's constitutional rights and, accordingly, the Texas appellate court's denial of this claim in Petitioner's state habeas action was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). *See also Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) (holding that a failure to record trial bench conferences does not establish that the defendant is entitled to habeas relief absent a showing of actual prejudice). Petitioner is not entitled to federal habeas relief on the basis of this claim.

6. Petitioner maintains he was denied his right to the effective assistance of counsel because his trial and appellate counsel failed to file an adequate motion for a new trial.

Petitioner contends that his trial counsel's performance was deficient because counsel failed to file a motion seeking a new trial. The record indicates Petitioner's trial counsel was allowed to withdraw on the date of Petitioner's conviction and that appellate counsel was appointed at that time. Petitioner's appellate counsel filed a timely motion for a new trial. Therefore, Petitioner has not established that his trial counsel's performance was deficient in this regard or that he was prejudiced by the alleged deficiency.

Petitioner alleges that his appellate counsel's motion for a new trial did not reflect that appellate counsel had thoroughly reviewed the trial transcripts before submitting the motion. To succeed on an ineffective assistance of appellate counsel claim, a petitioner must first show that his counsel's performance was objectively unreasonable in failing to find arguable issues to raise in the appeal, i.e., that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising those issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). If the petitioner is able to make

such a showing, he then must demonstrate prejudice arising from the deficient performance of

appellate counsel. To establish prejudice, the petitioner must show a reasonable probability that, but

for his counsel's unreasonable failure to assert a particular claim on appeal, he would have prevailed

in that appeal. *Id.* at 286.

> Petitioner argues that the motion for a new trial filed by his appellate counsel:

> sets forth NO actual grounds for new trial. Instead the motion cites nothing more than statutory provisions for a new trial, and case law that does not apply to any of the merits of the instant case. The Motion for a New Trial completely fails to preserve any error, or expand the record for preservation of any error. This was, and is deficient performance in . . . appellate counsel's conduct.
> \*\*\*
> In the instant case, appellate counsel admittedly put forward a beautiful appellate brief, even though it ultimately failed. Part of this failure must rest upon his shoulders though. Appellate counsel could not have evaluated any portion of the record prior to advancing the Motion for New Trial, therefore, appellate counsel could not identify any arguments that could be advance[d] on a motion for new trial. . . . Therefore, as a matter of fact and law, counsels (sic) performance was deficient, and prejudice ensued when the Court of Appeals held the issue wasn't preserved.

Document 1 at 10-11.

> Petitioner alleges that his appellate counsel's performance was deficient specifically because

he failed to argue that the warrantless blood draw violated Petitioner's Fourth Amendment rights.

> The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal. See *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Smith v. Murray*, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Regarding the operation of the deficient performance prong in this context, we have stated that "[c]ounsel does not need to raise every nonfrivolous ground of appeal available. Nonetheless, a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999) (citations, footnotes, and internal quotation marks omitted).

*Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004).

As noted by Respondent, in Texas a trial transcript must be prepared within 120 days of sentencing when a motion for a new trial is filed. However, pursuant to Texas Rules of Appellate Procedure 21.4, a motion for a new trial must be presented within 30 days of sentencing. Therefore, counsel's performance in not waiting until a transcript was available before docketing the motion for a new trial cannot be said to be outside the prevailing professional standard. Additionally, the only specific issue which Petitioner alleges should have been presented in the motion for a new trial, i.e., his *McNeely* claim, could not have been presented in the motion for a new trial as that decision was issued by the United States Supreme Court on April 17, 2013, and the motion for a new trial was filed February 11, 2013.[2] Petitioner has not, therefore, established either deficient performance nor prejudice with regard to his appellate counsel's filing of the motion for a new trial.

7. Petitioner maintains he was denied his right to a fair trial because the prosecutor made "improper comments" "solely for the purpose of inflaming the minds of jurors."

Petitioner asserts that the prosecutor made inflammatory comments during their cross-examination of Petitioner, which comments were actually made in the sentencing phase of the proceedings, and again during closing argument in the sentencing proceedings. Document 1 at 17; Document 12, Exh. 10 at 59 & 71.

To be entitled to federal habeas relief on a claim of prosecutorial misconduct, the petitioner must establish that improper prosecutorial conduct rendered the trial so fundamentally unfair as to make the result a denial of due process. *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). A trial is fundamentally unfair if there is a reasonable

---

[2] The court reporter's transcription of the proceedings was apparently prepared on or about March 4, 2013, and the motion for a new trial was due on or about March 8, 2013.

probability that the verdict would have been different but for the prosecutor's improper behavior. *Barrientes*, 221 F.3d at 753; *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992). The Fifth Circuit Court of Appeals has held a prosecutor's improper statements exceed constitutional limitations in only the most egregious cases. *Ortega v. McCotter*, 808 F.2d 406, 410–11 (5th Cir. 1987); *Houston v. Estelle*, 569 F.2d 372, 382 (5th Cir. 1978). When determining the lack of fundamental fairness, the Court must look at the prosecutor's behavior in the context of the entire trial and consider whether the challenged statements were a crucial, critical, highly significant factor in the jury's determination of guilt. *Foy*, 959 F.2d at 1318. "Improper jury argument by the prosecution does not present a claim of constitutional magnitude which is cognizable in a proceeding under 28 U.S.C. § 2254 unless such argument is so prejudicial that the [] state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." *Whittington v. Estelle*, 704 F.2d 1418, 1421 (5th Cir. 1983).

Having reviewed the record before the Court and Petitioner's allegations regarding the prosecutor's allegedly inflammatory statements, the Court concludes that the allegedly improper statements, when considered with the weight of the evidence against Petitioner, did not amount to a denial of due process because the challenged statements were not a significant factor in the jury's determination of guilt and did not render his trial fundamentally unfair. *Compare Houston*, 569 F.2d at 382-83 & n.14 (finding that the trial record contained "a litany of prosecutorial anathema prejudicial to the defendant."). Therefore, Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

Having independently reviewed the state court record and considered Petitioner's claims for federal habeas relief, this Court finds nothing unreasonable in the state court's application of clearly

established federal law or in the state court's determination of facts in light of the evidence. Accordingly, 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief in this matter.

<u>**CERTIFICATE OF APPEALABILITY**</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)

(citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

It is therefore ORDERED that the Application for Writ of Habeas Corpus [#1], filed by Petitioner on July 6, 2015, is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

**SIGNED** on April 20, 2017.


ROBERT PITMAN
UNITED STATES DISTRICT JUDGE